**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and CHARLES A. WHOBREY, as Trustee, | |
| *Plaintiffs*, | Case No. 26 C 11780 |
| v. | District Judge |
| REESE TRUCKING INC., an Ohio corporation, | Magistrate Judge |
| *Defendant*. | |

**COMPLAINT**

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and Charles A. Whobrey, one of its present trustees, for a cause of action against Defendant allege as follows:

**JURISDICTION AND VENUE**

1. This is an action to collect employer contributions, interest, and other related amounts owed to the Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") and to collect withdrawal liability (plus interest and other related amounts) owed by an employer as a result of a withdrawal from a multiemployer pension plan.

2. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001, *et seq*. This Court has jurisdiction over this action

under sections 502(e), 502(f), and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), 1132(f) and 1451(c).

3. Venue lies in this Court under sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the Pension Fund is administered at its principal place of business in Chicago, Illinois. Venue is also proper in this Court pursuant to the forum selection clause contained in the Pension Fund's Trust Agreement (the "Trust Agreement"), which designates this District as the appropriate forum for lawsuits to collect unpaid contributions and withdrawal liability. (A true and accurate copy of the Trust Agreement is attached hereto as Exhibit A.)

## PARTIES

4. The Pension Fund is a multiemployer pension plan within the meaning of sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3), with its principal and exclusive office located at 8647 West Higgins Road in Chicago, Illinois.

5. The Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing pension benefits to the Pension Fund's participants and beneficiaries and paying the administrative expenses of the Pension Fund.

6. Plaintiff Charles A. Whobrey is a present trustee and "fiduciary" of the Pension Fund as that term is defined in section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). Pursuant to sections 502(a)(3) and 4301(a)(1) of ERISA, 29 U.S.C. §§

1132(a)(3) and 1451(a)(1), Charles A. Whobrey is authorized to bring this action on behalf of the Pension Fund, its participants, and its beneficiaries in his capacity as a trustee and a fiduciary.

7. Defendant Reese Trucking Inc. ("Reese Trucking") is a corporation organized under the laws of the State of Ohio.

8. Non-party Huggy Bear Express, Inc. ("Huggy Bear") is a corporation organized under the laws of the State of Ohio and is an affiliate of Reese Trucking.

## BACKGROUND

### I. The collective bargaining agreements.

9. Local Union No. 92 affiliated with the IBT ("Local 92") is a labor organization which represents, for the purpose of collective bargaining, certain employees of Reese Trucking and employees of other employers in industries affecting interstate commerce.

10. During all relevant times, Reese Trucking and Local 92 have been parties to collective bargaining agreements (the "CBAs") pursuant to which Reese Trucking has been required to make contributions to the Pension Fund on behalf of certain of its covered employees, including drivers.

11. The CBAs generally prohibit Reese Trucking from assigning the work covered by the CBAs to persons who are not members of the bargaining unit.

### II. The Pension Fund's Trust Agreement.

12. Reese Trucking agreed to be bound by the terms of the Trust Agreement and all rules and regulations promulgated by the Pension Fund's Trustees under that Trust Agreement.

13. Under Article III, Section 1 of the Trust Agreement, Reese Trucking was required to "remit continuing and prompt Employer Contributions to the" Pension Fund "as required by the applicable collective bargaining agreement, participation agreement, this Agreement and/or other written agreement to which the Employer is a party. . . ."

14. The Pension Fund prohibits employers from engaging in adverse selection in relation to the Pension Fund. Article III, Section 8 of the Trust Agreement provides:

> The remedy of the termination of an Employer's participation set forth in Article III, Section 1 and Article IV, Section 20 is not the [Pension] Fund's exclusive remedy in the event of a violation of the [Pension] Fund's adverse selection rule. The [Pension] Fund shall also be entitled to collect additional Employer Contributions from an Employer that violates the [Pension] Fund's adverse selection rule in an amount equal to the Employer Contributions that would have been paid to the [Pension] Fund but for the adverse selection rule violation.

15. Article XIV, Section 4 of the Trust Agreement provides:

> Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any Employer Contributions due to the Trustees from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer with respect to past due Employer Contributions . . . prior to the entry of a judgment, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater). . . . Any judgment against an Employer for Employer Contributions owed to this [Pension] Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid Employer Contributions. The interest rate after entry of a judgment against an Employer for Employer Contributions . . . shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the

> fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

16. The Pension Fund relies upon participating employers to self-report the work history of eligible employees. The self-reporting system requires participating employers to identify those employees for whom contributions are owed and requires the employers to identify the weeks worked by the covered employees. Based upon the employee work history reported by the employers, the Pension Fund bills the employers for contributions.

**III. The Settlement Agreement.**

17. In 2013, the Pension Fund on the one hand and Reese Trucking and Huggy Bear on the other hand entered into a settlement agreement relating to a prior action in which the Pension Fund sought delinquent contributions for the period of 2006 through 2012 (the "Settlement Agreement").

18. Under paragraph 12 of the Settlement Agreement, Reese Trucking and Huggy Bear agreed that they would not engage in "the use of contracted labor (or the like), to replace any work presently performed either by Reese [Trucking] under the collective bargaining agreement or by Huggy Bear, or the transfer of any such work to any other entity."

19. Paragraph 5 of the Settlement Agreement provides:

> [Reese Trucking and Huggy Bear] represent and warrant . . . [that] through August 30, 2018. . . the number of drivers that Reese [Trucking] employs and for whom it has an obligation to contribute to the Pension Fund (the "Participating Drivers") will always be greater than or equal to the number of drivers employed by Huggy Bear and who would be covered by a collective bargaining agreement if employed by Reese [Trucking] (the "Non-Participating Drivers") (the ratio described in this paragraph shall hereinafter be referred to as the "Driver Ratio"). If the number of Participating Drivers

working for Reese [Trucking] ever becomes less than the number of Non-Participating Drivers working for Huggy Bear, Reese [Trucking] shall hire additional Participating Drivers within a reasonable period of time to ensure that the number of Non-Participating Drivers does not exceed the number of Participating Drivers in order to maintain the Driver Ratio. For example, if Reese [Trucking] employs 10 Participating Drivers and Huggy Bear employs 12 Non-Participating Drivers, Reese [Trucking] must hire a minimum of 2 additional Participating Drivers to maintain the Driver Ratio.

20. Paragraph 7 of the Settlement Agreement provides that:

> [Reese Trucking and Huggy Bear] agree that if they fail to maintain the Driver Ratio for the duration of any plan year, they will be required to remit a payment to the Pension Fund within 30 calendar days of written notice from the Pension Fund of a contribution deficiency to the Pension Fund (the "Guarantee Payment"). The Guarantee Payment shall be calculated as the difference between the contribution base units (as defined in 29 U.S.C. § 1301(a)(11) and hereinafter referred to as "CBUs") that Reese [Trucking] would have reported to the Pension Fund if [Reese Trucking and Huggy Bear] had maintained the Driver Ratio minus the actual CBUs reported by Reese [Trucking] and multiplied by Reese [Trucking]'s contribution rate at the end of the plan year in question. As an example, if Huggy Bear employed 12 Non-Participating Drivers for the plan year and Reese [Trucking] reported contributions on behalf of 10 Participating Drivers for the plan year, Reese [Trucking] should have submitted contributions for an additional 104 CBUs ((Huggy Bear: 12 drivers x 52 weeks = 624 CBUs) - (Reese [Trucking]: 10 drivers x 52 weeks= 520)). The Guarantee Payment owed by [Reese Trucking and Huggy Bear] would be determined by multiplying 104 CBUs by the contribution rate in effect at the end of the plan year. Reese [Trucking] shall be liable for the Guarantee Payment.

21. In paragraph 8 of the Settlement Agreement, the parties agreed that any Guarantee Payments would be treated as contributions under ERISA and MPPAA.

22. Paragraph 9 of the Settlement Agreement provides that:

> In the event [Reese Trucking and Huggy Bear] fail to timely make any payments required under this Settlement Agreement when due (in whole or in part), then interest shall be charged from the date that a payment was due to the date on which the payment is made at an annualized interest rate equal to the greater of seven and a half percent (7.5%) or two percent (2%) plus the prime interest rate established by JP Morgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, and shall be compounded annually.

23. Under paragraph 21 of the Settlement Agreement, the Pension Fund is entitled to sue to collect any delinquent Guarantee Payments, plus accrued interest.

24. Paragraph 22 of the Settlement Agreement provides that Reese Trucking "will be responsible for the payment of all reasonable attorneys' fees and costs incurred by the Pension Fund in connection with the enforcement of this Settlement Agreement."

## IV. The Contribution Agreement.

25. In 2019, the Pension Fund on the one hand and Reese Trucking and Huggy Bear on the other hand entered into a "Contribution Agreement" which contained similar terms to the prior Settlement Agreement.

26. Like they did in paragraph 12 of the Settlement Agreement, Reese Trucking and Huggy Bear agreed in Article 4.3 of the Contribution Agreement that they would not engage in "the use of contracted labor (or the like), to replace any work presently performed either by Reese [Trucking] under the collective bargaining agreement or by Huggy Bear, or the transfer of any such work to any other entity."

27. Similar to Paragraph 5 of the Settlement Agreement, Article 2.2 of the Contribution Agreement requires Reese Trucking, for the period of 2018 through so long as Reese Trucking participates in the Pension Fund, to always have a number of Participating Drivers (*i.e.*, drivers that are employed by Reese Trucking and for whom it has an obligation to contribute to the Pension Fund) that is greater than or equal to the number of Non-Participating Drivers (*i.e.*, drivers employed by Huggy Bear who would be covered by a collective bargaining agreement if employed by Reese Trucking). Like Paragraph 5 of the Settlement Agreement, Article 2.2 of the Contribution Agreement defines the ratio of Participating Drivers to Non-Participating Drivers as the "Driver Ratio."

28. Similar to Paragraph 7 of the Settlement Agreement, Article 2.4 of the Contribution Agreement provides that, for any plan years in which Reese Trucking and Huggy Bear failed to maintain the Driver Ratio, they would:

> be required to remit a payment to the Pension Fund within 30 calendar days of written notice from the Pension Fund of a contribution deficiency to the Pension Fund (the "Guarantee Payment"). The Guarantee Payment shall be calculated as the difference between the contribution base units (as defined in 29 U.S.C. § 1301(a)(11) and hereinafter referred to as "CBUs") that Reese [Trucking] would have reported to the Pension Fund if Reese [Trucking] and Huggy Bear had maintained the Driver Ratio minus the actual CBUs reported by Reese [Trucking] and multiplied by Reese [Trucking]'s contribution rate at the end of the plan year in question. As an example, if Huggy Bear employed Non-Participating Drivers for 624 weeks of a plan year and Reese [Trucking] reported contributions on behalf of 10 Participating Drivers totaling 520 weeks for the calendar year, Reese [Trucking] should have submitted contributions for an additional 104 CBUs ((Huggy Bear: 12 drivers x 52 weeks = 624 CBUs) — (Reese [Trucking]: 10 drivers x 52 weeks = 520 CBUs)). The Guarantee Payment owed by Reese [Trucking] and Huggy Bear would be determined by multiplying 104 CBUs by the contribution rate in effect at the end of the plan year. Reese [Trucking] and Huggy Bear shall be jointly and severally liable for the Guarantee Payment.

29. Similar to paragraph 8 of the Settlement Agreement, in Article 2.5 of the Contribution Agreement, the parties agreed that any Guarantee Payments would be treated as contributions under ERISA and MPPAA.

30. Similar to paragraph 9 of the Settlement Agreement, Article 2.6 of the Contribution Agreement provides that:

> In the event that Reese [Trucking] and Huggy Bear fail to timely make any Guarantee Payment required under this Agreement when due (in whole or in part), then interest shall be charged from the date that a payment was due to the date on which the payment is made at an annualized interest rate equal to the greater of seven and a half percent (7.5%) or two percent (2%) plus the prime interest rate established by JP Morgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, and shall be compounded annually.

31. Similar to paragraph 21 of the Settlement Agreement, under Article 5.1 of the Contribution Agreement, the Pension Fund is entitled to sue to collect any delinquent Guarantee Payments, plus accrued interest.

32. Similar to paragraph 22 of the Settlement Agreement, Article 5.4 of the Contribution Agreement provides that if "Reese [Trucking] and/or Huggy Bear fail to comply with the obligations set forth in this Agreement, the Pension Fund shall be entitled to an award of all attorneys' fees and costs incurred in connection with the enforcement of the obligations in this Agreement. . . ."

**STATUTORY AUTHORITY**

33. Section 515 of ERISA, 29 U.S.C. § 1145, provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

34. Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2) provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan –
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
> (i) interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

**COUNT I -**
**DELINQUENT CONTRIBUTIONS FOR A NON-REPORTED EMPLOYEE FOR THE PERIOD OF SEPTEMBER 18, 2022 THROUGH OCTOBER 1, 2022**

35. Plaintiffs hereby reallege and incorporate by reference each and every allegation made in paragraphs 1 through 34 as though fully set forth herein.

36. Pursuant to the Trust Agreement, the Pension Fund is permitted to audit the work history records of participating employers in order to verify the accuracy and completeness of the reported employee work history submitted as part of the Pension Fund's self-reporting system.

37. From January 9, 2024 to January 10, 2024, the Pension Fund audited the records of Reese Trucking to verify the accuracy and completeness of employee work history reported to the Pension Fund by Reese Trucking and to determine whether Reese Trucking complied with its contribution obligations under the CBAs, the Settlement Agreement, the Contribution Agreement, the Trust Agreement, and the Pension Fund's rules for the period of December 26, 2021 through and including December 31, 2022 (the "Audit").

38. The Audit revealed that Reese Trucking had failed to report the work history of a covered employee to the Pension Fund for the period of September 18, 2022 through October 1, 2022.

39. Reese Trucking breached the provisions of ERISA, the CBAs, and the Trust Agreement by failing to pay the contributions (and interest due thereon) owed to the Pension Fund on behalf of that covered employee.

40. Despite demands that Reese Trucking perform its statutory and contractual obligations with respect to making contributions to the Pension Fund, Reese Trucking has neglected and refused to pay the amounts that are due as a consequence of the conduct set forth in paragraph 39 above.

41. Reese Trucking owes the Pension Fund at least $391.00 for unpaid contributions (not including interest) as a result of the conduct set forth in paragraph 39 above.

42. Under the Trust Agreement, employers who fail to pay amounts revealed to be owed by an audit are required to pay all audit fees and costs incurred in connection with the Pension Fund's audit.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Reese Trucking and in favor of Plaintiffs, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and under the Trust Agreement, for:

(i) the unpaid contributions in the amount of $391.00 for the period of September 18, 2022 through October 1, 2022;

(ii) interest on the unpaid contributions computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) an annualized interest rate of 7.5%;

(iii) an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions; and

(iv) attorneys' fees and costs; and

(v) audit fees and costs.

(b) Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (ii) an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

(c) For such further or different relief as this Court may deem proper and just.

**COUNT II -**
**DELINQUENT CONTRIBUTIONS DUE TO BREACH**
**OF GUARANTEE PAYMENT OBLIGATIONS UNDER**
**THE SETTLEMENT AGREEMENT AND CONTRIBUTION AGREEMENT**

43. Plaintiffs hereby reallege and incorporate by reference each and every allegation made in paragraphs 1 through 42 as though fully set forth herein.

44. The Audit also revealed that Reese Trucking had failed to pay the Guarantee Payments required under the Settlement Agreement and the Contribution Agreement for the plan years of 2017 through 2019.

45. Reese Trucking breached the provisions of the Settlement Agreement and the Contribution Agreement by failing to pay the Guarantee Payments for the plan years of 2017 through 2019.

46. Despite demands that Reese Trucking perform its obligations, Reese Trucking has neglected and refused to pay the delinquent Guarantee Payments.

47. Reese Trucking owes the Pension Fund at least $6,106.50 for the unpaid Guarantee Payments (not including interest).

48. As alleged above, both the Settlement Agreement and the Contribution Agreement provide that the Guarantee Payments are to be treated as contributions under ERISA and MPPAA.

49. As also alleged above, under the Trust Agreement, employers who fail to pay amounts revealed to be owed by an audit are required to pay all audit fees and costs incurred in connection with the Pension Fund's audit.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Reese Trucking and in favor of Plaintiffs, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and under the Trust Agreement, for:

(ii) unpaid contributions in the amount of $6,106.50 owed to the Pension Fund for the plan years of 2017 through 2019;

(iii) interest on the unpaid contributions computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) an annualized interest rate of 7.5%, with said interest compounded annually;

(iv) an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions; and

(v) attorneys' fees and costs; and

(vi) audit fees and costs.

(b) Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (ii) an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

(c) For such further or different relief as this Court may deem proper and just.

**COUNT III -**
**DELINQUENT CONTRIBUTIONS DUE TO BREACH OF THE CBAS, SETTLEMENT AGREEMENT, CONTRIBUTION AGREEMENT, TRUST AGREEMENT, AND THE PENSION FUND'S RULES**

50. Plaintiffs hereby reallege and incorporate by reference each and every allegation made in paragraphs 1 through 49 as though fully set forth herein.

51. The Audit also revealed that, during the period of December 28, 2014 through March 2, 2024, Reese Trucking transferred and/or assigned work or services covered by the CBAs to an employee who, as a manager, was prohibited from receiving benefits from the Pension Fund.

52. Because Reese Trucking transferred and/or assigned work or services covered by the CBAs to a non-covered employee during the period of December 28, 2014 through March 2, 2024, a non-covered employee performed work covered by the CBAs during this period, but no contributions were paid to the Pension Fund on behalf of the work the employee performed.

53. The transfer of work covered by the CBAs to the non-covered employee violated the CBAs.

54. The Pension Fund, as a third-party beneficiary of the CBAs, is entitled to sue for breach of those CBAs.

55. The transfer of work covered by the CBAs to the non-covered employee also violated paragraph 12 of the Settlement Agreement and Article 4.3 of the Contribution Agreement.

56. In addition, the transfer of work covered by the CBAs to the non-covered employee also violated the Pension Fund's rule against adverse selection. Under Article III, Section 8 of the Trust Agreement, the Pension Fund is entitled to collect, as ERISA

contributions, the additional contributions that would have been paid to the Pension Fund if a covered employee (instead of the non-covered employee) had performed the work.

57. The Pension Fund has been damaged by Reese Trucking's transfer of covered work to the non-covered employee.

58. Reese Trucking has breached the provisions of ERISA, the CBAs, the Settlement Agreement, the Contribution Agreement, the Trust Agreement, and the Pension Fund's rules by failing to pay all of the contributions (and interest due thereon) owed to the Pension Fund for the period of December 28, 2014 through March 2, 2024 as a result of the conduct set forth in paragraphs 51 through 57.

59. Reese Trucking owes the Pension Fund unpaid contributions in the total amount of $50,506.50 (not including interest) for the period of December 28, 2014 through March 2, 2024, as a result of the conduct set forth in paragraphs 51 through 57.

60. As alleged above, under the Trust Agreement, employers who fail to pay amounts revealed to be owed by an audit are required to pay all audit fees and costs incurred in connection with the audit.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Reese Trucking and in favor of Plaintiffs, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and under the Trust Agreement, for:

(i) the unpaid contributions in the amount of $50,506.50 owed to the Pension Fund;

(ii) interest on the unpaid contributions computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%)

plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) an annualized interest rate of 7.5%;

(iii) an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions; and

(iv) attorneys' fees and costs; and

(v) audit fees and costs.

(b) Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (ii) an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

(c) For such further or different relief as this Court may deem proper and just.

**COUNT IV -**
**DELINQUENT CONTRIBUTIONS FOR THE PERIOD**
**OF DECEMBER 29, 2024 THROUGH FEBRUARY 22, 2025**

61. Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 34 as though fully set forth herein.

62. Based on work history reported by Reese Trucking, Reese Trucking has failed to pay all of the contributions owed to the Pension Fund for the period of December 29, 2024 through February 22, 2025.

63. Reese Trucking has breached the provisions of ERISA, the CBAs, and the Trust Agreement by failing to pay the contributions (and interest due thereon) owed to the Pension Fund for the period of December 29, 2024 through February 22, 2025.

64. Despite demands that Reese Trucking perform its statutory and contractual obligations with respect to making contributions to the Pension Fund, Reese Trucking has neglected and refused to pay the amounts that are due as a consequence of the conduct set forth in paragraphs 62 and 63.

65. Reese Trucking owes the Pension Fund at least $1,644.00 for unpaid contributions (not including interest) for the period of December 29, 2024 through February 22, 2025, as a result of the conduct set forth in paragraphs 62 and 63.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Reese Trucking in favor of Plaintiffs, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), for:

(i) unpaid contributions in the amount of $1,644.00 for the period of December 29, 2024 through February 22, 2025;

(ii) interest on the unpaid contributions computed and charged at the greater of: (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) an annualized interest rate of 7.5%;

(iii) an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions; and

(iv) attorneys' fees and costs;

(b) Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

(c) For such further or different relief as this Court may deem proper and just.

**COUNT V -**
**WITHDRAWAL LIABILITY**

66. Plaintiffs hereby reallege and incorporate by reference each and every allegation made in paragraphs 1 through 34 of this Complaint as though fully set forth herein.

67. As a result of a decline in Reese Trucking's contributions to the Pension Fund, the Pension Fund determined that on December 31, 2024, Reese Trucking effected a "partial withdrawal" from the Pension Fund within the meaning of section 4205(a)(1) of ERISA, 29 U.S.C. § 1385(a)(1).

68. As a result of this partial withdrawal, the Pension Fund determined that Reese Trucking incurred withdrawal liability to the Pension Fund in the principal amount of $6,659,093.61, as determined under section 4201(b) of ERISA, 29 U.S.C. § 1381(b).

69. On or about March 25, 2026, Reese Trucking received a notice and demand for payment of the withdrawal liability issued by the Pension Fund in accordance with sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1). In the notice and demand, the Pension Fund demanded full payment of the entire amount of the withdrawal liability by April 1, 2026, pursuant to section 4219(c)(5)(B) of ERISA, 29 U.S.C.

§ 1399(c)(5)(B), and Appendix E, § 5(e)(2) of the Pension Fund's Plan. The amount demanded was $6,659,093.61, the balance owed at that time on the withdrawal liability.

70. Reese Trucking did not request review pursuant to section 4219(b)(2)(A) of ERISA, 29 U.S.C. § 1399(b)(2) and has not attempted to initiate arbitration under section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1).

71. Timely requesting review is a statutory prerequisite to initiating arbitration under section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1). Consequently, Reese Trucking has waived its right to dispute the withdrawal liability, and the amount demanded by the Pension Fund is due and owing pursuant to section 4221(b)(1) of ERISA, 29 U.S.C. § 1401(b)(1).

72. Reese Trucking has failed to pay the required withdrawal liability payment (or any portion thereof) to the Pension Fund.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Reese Trucking, and on behalf of Plaintiffs, pursuant to sections 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(b), for:

(i) unpaid withdrawal liability in the amount of $6,659,093.61;

(ii) interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged;

(iii) an amount equal to the greater of interest on the unpaid withdrawal liability or liquidated damages of 20% of the unpaid withdrawal liability; and

(iv) attorneys' fees and costs.

(b) Post-judgment interest computed and charged on the entire judgment at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, compounded annually; and

(c) Such further or different relief as this Court may deem proper and just.

Respectfully submitted,

*/s/ Anthony E. Napoli*

Anthony E. Napoli
Attorney for Plaintiffs
Central States Funds
8647 W. Higgins Road, 8th Floor
Chicago, Illinois 60631
(847) 939-2469
ARDC # 06210910
tnapoli@centralstates.org

September 25, 2026